UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: ) | Chapter 11 | |
| ) | | |
| EARL GAUDIO & SON, INC., ) | Case No. 13-90942 | |
| ) | | |
| Debtor. ) | | |
| ) | | |
| ) | | |
| EARL GAUDIO & SON, INC., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Adv. Pro. No. _____ | |
| ) | | |
| UNITED STATES ) | | |
| SMALL BUSINESS ADMINISTRATION, ) | | |
| ) | | |
| Defendant. ) | | |

**COMPLAINT FOR TURNOVER OF ESTATE PROPERTY UNDER 11 U.S.C. § 542, OBJECTING TO CLAIM UNDER 11 U.S.C. § 502, AND FOR DETERMINATION OF SECURED STATUS UNDER 11 U.S.C. § 506**

Comes now the above captioned Debtor and Debtor-in-Possession, by and through First Midwest Bank as Custodian of Earl Gaudio and Son, Inc., (the "Debtor" and "Plaintiff") and for its Complaint for Turnover of Estate Property Under 11 U.S.C. § 542, Objecting to Claim Under 11 U.S.C. § 502, and for Determination of Secured Status under 11 U.S.C. § 506, respectfully states the following:

**Jurisdiction and Venue**

1. On July 19, 2013 (the "Petition Date"), the above-captioned Debtor commenced its case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to manage its assets as a Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.   This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the reference in CDIL-LR, Bankruptcy Rule 4.1.

3.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.   The claims and objections asserted in this adversary proceeding are core proceedings under 28 U.S.C. § 157, and this Court has constitutional authority to enter final judgment. If for any reason this court determines that all or any portion of this proceeding is non-core, the Plaintiff consents to the entry of a final order by this Court.

## Common Allegations

**A.   Debtor, the Sale Order and Disbursement Order.**

5.   Debtor is a Delaware corporation that was incorporated on or about June 10, 1968, is registered to do business in the State of Illinois, and had its principal place of business in Tilton, Vermilion County, Illinois.

6.   Historically, the Debtor was a beer and food distributor, largely as an Anheuser-Busch wholesaler, serving East Central Illinois and portions of Indiana and Ohio. The Debtor also had additional operational components including snack foods and two UPS Franchises (one located in Danville, IL and one located in Champaign, IL). The Debtor discontinued its snack food distribution business on July 18, 2013 but continues to operate the UPS Franchises.

7.   On June 12, 2013, Helen Gaudio, as guardian of the Estate of Earl Gaudio commenced a lawsuit against Eric Gaudio, Dennis Gaudio and the Debtor. On June 27, 2013, the Circuit Court for the Fifth Judicial Circuit of Illinois, Vermilion County appointed First Midwest Bank as Custodian of Earl Gaudio and Son, Inc. (the "Custodian") and vested the Custodian with all powers, authorities, rights, and privileges previously possessed by the directors and officers of Earl Gaudio and Son, Inc. ("EG&S").

8. On August 15, 2013, the Debtor filed a *Motion for Entry of An Order Authorizing the Sale of Operational Assets Free and Clear of Liens, Claims, and Encumbrances and Assignment and Assumption of Executory Contracts* (the "Sale Motion"). On September 6, 2013, the Court entered an *Order Authorizing the Sale of Operational Assets Free and Clear of Liens, Claims, and Encumbrances and Assignment and Assumption of Executory Contracts* (the "Sale Order").

9. On September 20, 2013 the transaction contemplated by the Sale Motion and approved by the Sale Order (the "Sale") closed and resulted in a total purchase price of $9,569,700.73 comprised of: (i) $9,113,886.25 for the distribution rights acquired by the purchaser from Anheuser-Busch InBev, Inc. via assumption, assignment and cure of the Wholesaler Equity Agreement with EG&S; (ii) $290,000 for vehicles and equipment; and (iii) $165,814.48 for inventory. (*See* Closing Statement—Exhibit A to Report of Sale Submitted Pursuant to Rule 6004(f)(1) of the Federal Rules of Bankruptcy Procedure (ECF 117-1)).

10. Subsequent to closing the sale and in attempt to minimize expenses of the estate and build consensus among interested parties in this proceeding, on September 12, 2013, the Debtor submitted a *Motion to Establish Procedure for Disbursement of Sale Proceeds to Purported Lienholders* (ECF 88). After considerable negotiations between interested parties herein, an unopposed *Order Granting, in Part, Motion to Establish Procedure for Disbursement of Sale Proceeds to Purported Lienholders* was entered on October 24, 2013 (the "Disbursement Order") (ECF 160).

11. Pursuant to the Disbursement Order, the "Purported Lienholders" (as identified and defined therein) were required to file any amendments to their claims to increase or modify the amounts claimed as secured within fifteen (15) days of the entry of the Disbursement

Order—by November 8, 2013 (the "Amendment Deadline")—and were barred from seeking additional amounts as secured, unless they elected not to be bound by the Amendment Deadline, in which case the Debtor would hold and reserve the funds of such Purported Lienholder pending further Order of the Court.

12. Also pursuant to the Disbursement Order, among other things, all parties herein were allowed a forty-five (45) day period to provide notice of certain objections to claims of the Debtor's Purported Lienholders.

### B. United States Small Business Administration's Claim and Loan Documents.

13. The United States Small Business Administration ("SBA"), one of the Purported Lienholders, filed a Proof of Claim, as last amended on October 25, 2013 and docketed in the Court's claims register as Claim 10-3, which seeks allowance of a secured claim in the amount of $1,722,713.57, based upon money loaned as evidenced by a U.S. Small Business Administration Note executed by EG&S (the "SBA Claim"). A copy of the SBA Claim is attached as Exhibit A.

14. The SBA Claim is allegedly composed of $1,680,156.02 in principal, $17,257.78 in accrued interest, and $25,299.77 in outstanding interest—a total claimed amount of $1,722,713.57 as of October 23, 2013. (*See* SBA Claim, Attachment 5 (Claim 10-3 Part 6)).

15. Attached to the SBA Proof of Claim are (collectively, the "Loan Documents"): (i) a U.S. Small Business Administration Note (CDC/504 Loans) dated May 4, 2009; (ii) a Mortgage dated May 4, 2009, recorded with the Vermilion County Recorder, Illinois on May 4, 2009 (the "Mortgage"), in favor of Small Business Growth Corporation ("SBGC") as Mortgagee, purporting to encumber the real property commonly known as 1803 Georgetown Road, Tilton, Illinois (the "Real Property"), and an Assignment of Mortgage dated May 4, 2009, recorded with

- 4 -

the Vermilion County Recorder, Illinois on May 4, 2009, assigning the Mortgage to the SBA; (iii) a UCC-1 Financing Statement bearing a Delaware Department of State, U.C.C. Filling Section date stamp of May 5, 2009, naming EG&S as the debtor and the SBA as the secured party (the "UCC-1 Financing Statement"); (iv) a Security Agreement executed May 4, 2009, granted by EG&S in favor of SBGC and assigned to the SBA (the "Security Agreement"); (v) a Verification of Personal Property Ownership; and (vi) a Pay-Off statement.

### C. Payment of the SBA Claim with Reservation of Rights.

16. Pursuant to the terms of the Disbursement Order, on or about December 13, 2013, the Debtor paid the SBA Claim in full by check in the amount of $1,722,713.57 (the "SBA Disbursement").

17. As set forth in the Disbursement Order, the distribution of Sale proceeds by the Debtor to the SBA were "deemed interim distributions only and made without prejudice to the rights of the Debtor, the Committee, or any future trustee to object to secured claims at a later date or to cause an adversary proceeding to be filed, if one is required, seeking a determination as to the extent, validity and priority of any secured claim and any other relief related to a claim of any of the Purported Lienholders," which specifically included the SBA. (See Disbursement Order at 5 (ECF 160)).

### COUNT I
### (Turnover of Estate Property Under 11 U.S.C. § 542)

18. The allegations contained in the foregoing paragraphs are incorporated into this paragraph as if fully set forth herein.

19. Under the terms of the Security Agreement, EG&S granted and the SBA received, by assignment from SBGC, "a security interest in the Debtor's equipment and fixtures and the

- 5 -

proceeds therefrom" (the "Collateral"). (*See* SBA Claim, Attachment 4 at 2–4 (Claim 10-3 Part 5)).

20. The UCC-1 Financing Statement contains the following description of the Collateral: "All equipment and fixtures acquired with loan proceeds and the proceeds thereof, wherever located." (*See* SBA Claim, Attachment 4 at 1 (Claim 10-3 Part 5)).

21. While, pursuant to the Loan Documents, it appears that the SBA may have had a perfected security interest in equipment and fixtures acquired with loan proceeds of the SBA loan, SBA was not granted, and could not and did not perfect, an interest in any of the Debtors' other assets sold as part of the Sale.

22. The SBA did not hold a security interest in the distribution rights, inventory or vehicles sold as part of the Sale under the Sale Order.

23. Of the total amount of $290,000.00 paid by the purchaser for vehicles and equipment as part of the Sale, approximately $222,517.65 was paid for vehicles, such that the maximum amount of sale proceeds attributable to Debtor's equipment sold as part of the Sale was $67,482.35 (the "Equipment Amount"). (*See* Closing Statement—Exhibit A to Report of Sale Submitted Pursuant to Rule 6004(f)(1) of the Federal Rules of Bankruptcy Procedure (ECF 117-1)).

24. None of the purchase price paid in connection with the Sale authorized under the Sale Order was attributable to fixtures. (*See* Closing Statement—Exhibit A to Report of Sale Submitted Pursuant to Rule 6004(f)(1) of the Federal Rules of Bankruptcy Procedure (ECF 117-1)).

25. With respect to the Debtor's equipment sold as part of the Sale, the SBA's security interest therein may have been subordinate to the interests of the IRS under 26 U.S.C.

§ 6321. Accordingly, the SBA may not have had a first priority perfected security interest in any of the proceeds of the Sale, and to that extent was not entitled to any proceeds of that Sale, and should not have been paid any amount from the proceeds of the Sale.

26. Subject to marshalling and the determination of priority of liens on Debtor's equipment, the Equipment Amount is the maximum that should have been paid from the Sale proceeds to the SBA on account of the SBA's perfected security interest in the Collateral sold as part of the Sale.

27. Accordingly, given that the SBA was not secured in anything but the equipment sold as part of the Sale, the SBA was not entitled to receive the full amount of the SBA Disbursement paid by the Custodian and received by the SBA on or about December 14, 2013.

28. The amount by which the SBA Disbursement exceeds the amount, if any, of the amount of the SBA Claim determined to have been secured by equipment sold under the Sale Order, taking into consideration the priority of any such SBA security interest, constitutes property of the estate that must be returned to the Debtor (the "SBA Overpayment").

29. The Debtor may use the SBA Overpayment under 11 U.S.C. § 363.

30. The SBA Overpayment is a debt owed to the Debtor, which is property of the estate and that is matured.

31. Accordingly, Debtor is entitled to judgment, pursuant to 11 U.S.C. § 542, requiring the SBA to turn over the SBA Overpayment to the Debtor or pay the value of the SBA Overpayment to the Debtor.

32. Notwithstanding the forgoing, given that the SBA may still hold the Mortgage securing amounts that could otherwise revive as due and owing under the Note by virtue of an immediate turnover of the SBA Overpayment sought herein, Debtor requests that the SBA retain

the SBA Overpayment, such that there will be no accrual of interest upon the SBA Claim during the period of retention, until such time as the Real Property is sold, the extent and priority of the liens thereon are determined, and the proceeds of that sale are ready to be disbursed, at which time the SBA shall immediately turn over to the Debtor or pay the value to the Debtor of the amount by which the SBA Overpayment exceeds the amount of proceeds the SBA would otherwise be entitled to receive from the sale of the Real Property pursuant to its Note and Mortgage had the SBA not been permitted to retain the SBA Overpayment, but without any accrual of interest from and after October 23, 2013 given its retention of the SBA Overpayment, plus interest payable to the Debtor at the federal judgment rate from December 13, 2013 (the "<u>SBA Final Overpayment</u>").

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment on Count I of its Complaint requiring the SBA to turn over or pay, as applicable, the amount of the SBA Final Overpayment to the Debtor, plus interest at the applicable federal judgment rate from the date of the SBA Disbursement, plus costs of this suit, and for such other and further relief as is just and proper.

## COUNT II
### (Objection to Proof of Claim Under 11 U.S.C. § 502)

33. The allegations contained in the foregoing paragraphs are incorporated into this paragraph as if fully set forth herein.

34. Debtor objects to the SBA Claim pursuant to 11 U.S.C. § 502(b) and Rule 3007 of the Federal Rules of Bankruptcy Procedure because, to the extent that the SBA Claim is ultimately determined to be undersecured, the SBA is not entitled to the payment of interest on the SBA Claim.

35. The amount of the SBA Claim should be reduced to exclude the asserted amounts for interest accruing.

36. Further, to the extent the SBA is determined, under Count I of this Complaint, to have received the SBA Overpayment and is ordered to turn over the SBA Final Overpayment, the SBA Claim shall be disallowed pursuant to 11 U.S.C. § 502(d) unless and until the SBA has paid the amount of the SBA Final Overpayment to the Debtor.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment on Count II of its Complaint disallowing interest on the SBA Claim, disallowing the SBA Claim in its entirety unless and until the SBA has paid the amount of the SBA Final Overpayment to the Debtor, for costs of suit, and for such other and further relief as is just and proper.

## COUNT III
### (Determination of Secured Status Under 11 U.S.C. § 506)

37. The allegations contained in the foregoing paragraphs are incorporated into this paragraph as if fully set forth herein.

38. The SBA claims liens upon the Real Property, equipment and fixtures of the Debtor, which allegedly secure payment of the amounts alleged due in the SBA Claim.

39. As set forth in Count I of the Complaint, the alleged liens of the SBA did not attach to the distribution rights, inventory or vehicles sold as part of the Sale under the Sale Order.

40. Accordingly, Debtor is entitled to a determination pursuant to 11 U.S.C. § 506 that the SBA Claim is a secured claim only up to the Equipment Amount, plus the amount of the Debtor's equity in the Real Property to which the Mortgage is ultimately determined to attach, in the order of its priority.

41. The portion of the SBA Claim secured by the Debtor's equity in the Collateral and the Real Property, in the order of priority of the UCC-1 Financing Statement and Mortgage, may be less than the amount of the indebtedness alleged to be owed on the SBA Claim, such that the SBA Claim may be undersecured, in which case the SBA is not entitled to be paid interest on the SBA Claim.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment on Count III of its Complaint determining, that the secured portion of the SBA Claim be reduced and determining that the SBA Claim is undersecured and not entitled to accrue interest, for costs of suit, and for such other and further relief as is just and proper.

ICE MILLER, LLP

By: /s/ Victoria E. Powers
Victoria E. Powers
250 West Street
Columbus, OH 43215
614-462-5010 – Telephone
614-222-3478 – Facsimile
victoria.powers@icemiller.com – Email

*Counsel to the Debtor*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 17, 2015, a copy of the foregoing *Complaint* was served upon the following by regular U.S. Mail, postage prepaid:

David H. Hoff
Assistant U.S. Attorney
201 S. Vine, Suite 226
Urbana, IL  61802

*Attorney for United States Small
Business Administration*

A summons and copy of the foregoing *Complaint* will be separately served upon the Defendant in accordance with Rule 7004 of the Federal Rules of Bankruptcy Procedure.

        ICE MILLER, LLP

        By: /s/ Victoria E. Powers
           Victoria E. Powers
           250 West Street
           Columbus, OH 43215
           614-462-5010 – Telephone
           614-222-3478 – Facsimile
           victoria.powers@icemiller.com – Email

        *Counsel to the Debtor*