UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| EARL GAUDIO & SON, INC., | ) | |
| | ) | Case No.  13-90942 |
| Debtor. | ) | |
| _____ | ) | |
| EARL GAUDIO & SON, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adv. Pro. No.  15-09025 |
| | ) | |
| UNITED STATES SMALL BUSINESS | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056, Plaintiff hereby moves for

summary judgment on Count I (Turnover of Estate Property); Count II (Disallowance of Claim);

and Count III (Determination of Secured Claim) of its Complaint.  The grounds supporting this

Motion are set forth in the attached Memorandum in Support, which includes a Statement of

Undisputed Material Facts pursuant to CDIL-LR 7.1(D) and *In re Clayton*, 369 B.R. 383 (Bankr.

C.D. Ill. 2007).

Respectfully submitted,

ICE MILLER LLP

By: /s/ Tyson A. Crist_____
       Victoria E. Powers
       Tyson A. Crist
       250 West Street
       Columbus, OH 43215
       614-462-5010 – Telephone
       Victoria.Powers@icemiller.com
       Tyson.Crist@icemiller.com
       *Counsel to the Debtor*

## MEMORANDUM IN SUPPORT

### I.   INTRODUCTION

#### A.   Brief Factual Background.

On October 25, 2013, the above-captioned Defendant, United States Small Business Administration ("Defendant" and "SBA") filed an Amended Proof of Claim asserting that it was owed a total of $1,722,713.57 (the "Claim") by the Debtor.  The Debt was secured by a mortgage on the real property commonly known as 1803 Georgetown Road, Tilton, Illinois (the "Warehouse Property"), dated May 4, 2009, which was assigned to the Defendant, and also by a security interest in certain of the Debtor's equipment and fixtures.

Pursuant to an Order of this Court, the operational assets of the Debtor, including equipment in which the Defendant asserted its security interest, were sold on September 20, 2013.  The allocated value of the Debtor's equipment, as pled in the Complaint, was $67,482.35. Accordingly, that was the maximum amount that Defendant could have been entitled to receive to apply toward its Claim on account of its security interest on personal property, leaving a balance of $1,655,231.22, based on the total asserted amount of the Claim.

Pursuant to a disbursement order entered by the court regarding the proceeds of the sale of the Debtor's operational assets, the Defendant was paid the full amount of its Claim, $1,722,713.57, which included interest to October 23, 2013.  The disbursement order provides that the payment was not a final payment; rather, it was an interim distribution as to which the Debtor reserved all rights.  The disbursement order clearly provides that the distributions were interim in nature, made without prejudice to the rights of the Debtor to later seek a determination as to the validity, priority and extent of the Defendant's lien in the assets sold.  Consistent with the interim nature of the disbursement to the SBA, it has neither withdrawn its Claim nor released either its mortgage or its UCC-1 financing statement as to the Debtor's property.

2

B.       **Brief Procedural History of this Adversary.**

Plaintiff previously filed a *Motion for Summary Judgment* (Dkt. 44) on July 13, 2016, and Defendant filed a *Response and Cross Motion for Summary Judgment* (Dkt. 48) (the "Response and Cross-Motion") on July 28, 2016.  Following replies by both parties (Dkt. 50 and 51), this Court set a telephonic hearing for October 20, 2016 (Dkt. 54) and entered an Order (Dkt. 57) the same day denying both motions without prejudice for the reasons stated on the record.  This Court stated it was denying the motions because there was an unresolved (disputed) material issue of fact concerning the value of the Warehouse Property that could not be resolved until it was sold, which would establish the value and the total amount that Defendant could be entitled to receive on account of its Claim.[1]  Since then, this adversary has been continued to track with and await the sale of the Warehouse Property.

C.       **Sale of the Warehouse Property.**

The sale of the Warehouse Property closed on November 7, 2017, and a *Report of Sale of 1803 Georgetown Road, Tilton, Illinois Submitted Pursuant to Rule 6004(f)(1) of the Federal Rules of Bankruptcy Procedure* (Dkt. 699) (the "Report of Warehouse Sale") containing the details of the price and the proceeds received by the estate was filed on November 22, 2017.

D.       **Summary of Plaintiff's Argument.**

Because the parties do not dispute that Defendant received money from the estate in December 2013 that exceeded the value of the sale proceeds attributable to the Debtor's equipment, the only property sold in which the SBA could assert an interest (via its security interest), and because the Warehouse Property has now been sold for less than the amount of the SBA's Claim, the Debtor is entitled to summary judgment on Count I requiring the Defendant to turn over the prior, interim distribution.  The estate is entitled to turnover of the amount of the

---

[1]   This Court stated that the issue of fact could not be resolved by competing appraisals.

interim distribution received by the SBA that exceeds the amount allocable to equipment sold. Thus, the Debtor seeks turnover of the overpayment received by the SBA, which is $1,655,231.22, plus interest.  Once that amount is turned over, and the secured and unsecured portions of the SBA's Remaining Claim (as defined below) are established (as requested below), the SBA would be entitled to payment of the secured amount of its Remaining Claim from the net sale proceeds of the Warehouse Property, in accordance with the Debtor's final distribution of estate property under a confirmed plan of liquidation.

In addition, the Debtor is entitled to summary judgment on Count II: (a) disallowing interest on the SBA's Claim, pursuant to 11 U.S.C. § 502(b), because the sale of the Warehouse Property has established that its Claim is undersecured, such that the total allowed amount can be no more than the principal balance and outstanding interest as of the Petition Date, in the total amount of $1,705,455.79; and (b) disallowing its Claim, pursuant to § 502(d), in full, unless it returns the estate property in the amount of $1,655,231.22, plus interest.

Finally, Debtor is entitled to summary judgment on Count III determining, pursuant to § 506(a)(1), that the SBA's remaining Claim of $1,637,973.44[2] (the "Remaining Claim"), subject to disallowance under § 502(d), is secured to the extent of its interest (the "SBA Interest") in the net proceeds received by the estate from the sale of the Warehouse Property, as set forth in the Report of Warehouse Sale, by virtue of the SBA's mortgage lien that was transferred thereto, in the order of priority of its mortgage.  In sum, on Count III this Court should determine that, so long as the SBA turns over the full amount of estate property previously demanded and as requested herein, then the SBA's Remaining Claim of

---

[2]  The "remaining" claim is for amounts not satisfied through the SBA's retention of proceeds of the Debtor's equipment sold in September 2013, in the amount of $67,482.35, presuming the SBA is permitted to retain that amount from the interim distribution.

$1,637,973.44 would be allowed for the secured amount of the SBA Interest and the balance between such Remaining Claim and the SBA Interest would be allowed as an unsecured, non-priority claim.

## II.    UNDISPUTED MATERIAL FACTS

As established by the proof of claim filed by the SBA with the Clerk of Court on October 25, 2013, docketed as Claim No. 10-3, which is attached as Exhibit 1; the admissions in Defendant's *Answer to Complaint for Turnover of Estate Property Under 11 U.S.C. § 542, Objecting to Claim Under 11 U.S.C. § 502, and for Determination of Secured Status Under 11 U.S.C. § 506* (Dkt. 11) (the "Answer"), which is attached as Exhibit 2; the prior orders of this Court and related filings, as referenced below, for which Plaintiff requests the Court to take judicial notice pursuant to Fed. R. Evid. 201; the Affidavit (as defined below), which is attached as Exhibit 6, and the remaining items referenced below and attached as Exhibits hereto, the following material facts are undisputed:

1.    On July 19, 2013 (the "Petition Date"), the Debtor commenced its case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). (*See* Answer at 1-2, ¶ 1).

2.    On August 15, 2013, the Debtor filed a *Motion for Entry of An Order Authorizing the Sale of Operational Assets Free and Clear of Liens, Claims, and Encumbrances and Assignment and Assumption of Executory Contracts* (Dkt. 48) (the "Sale Motion"). (*See* Answer at 3, ¶ 8).

3.    On September 6, 2013, the Court entered an *Order Authorizing the Sale of Operational Assets Free and Clear of Liens, Claims, and Encumbrances and Assignment and Assumption of Executory Contracts* (Dkt. 78) (the "Sale Order") (attached as Exhibit 3). (*See* Answer at 3, ¶ 8).

5

4.  On September 12, 2013, the Debtor submitted a *Motion to Establish Procedure for Disbursement of Sale Proceeds to Purported Lienholders* (Dkt. 88) (the "Distribution Motion"). (*See* Answer at 4, ¶ 10).

5.  On September 20, 2013, the transaction contemplated by the Sale Motion and approved by the Sale Order (the "Skeff Sale") closed and resulted in a total purchase price of $9,569,700.73 comprised of: (i) $9,113,886.25 for the distribution rights acquired by the purchaser from Anheuser-Busch InBev, Inc. via assumption, assignment and cure of the Wholesaler Equity Agreement with EG&S; (ii) $290,000 for vehicles and equipment; and (iii) $165,814.48 for inventory. (*See Closing Statement – Exhibit A to Report of Sale Submitted Pursuant to Rule 6004(f)(1) of the Federal Rules of Bankruptcy Procedure* (Dkt. 117) (the "Report of Skeff Sale") (attached as Exhibit 4)). (*See* Answer at 4, ¶ 9).

6.  On September 30, 2013, the Official Committee of Unsecured Creditors (the "Committee") filed its *Limited Objection to Motion to Establish Procedures for Disbursement of Sale Proceeds to Purported Lienholders* (Dkt. 115) (the "Committee's Objection") asserting that "all distributions of sale proceeds authorized by the Court at this time should be deemed interim distributions only without prejudice to the rights of the Debtor, the Committee and any future trustee to object to secured claims at a later date or to cause an adversary proceeding to be filed if one is required."

7.  An *Order Granting, in Part, Motion to Establish Procedure for Disbursement of Sale Proceeds to Purported Lienholders* was entered on October 24, 2013 (Dkt. 160) (the "Disbursement Order") (attached as Exhibit 5). (*See* Answer at 5, ¶ 10).

6

8.      The Disbursement Order defines the term "Purported Lienholders."  (*See* Answer at 5, ¶ 11).

9.      The Defendant is a "Purported Lienholder" under the terms of the Disbursement Order.  (*See* Answer at 6, ¶ 13).

10.     Pursuant to the Disbursement Order, among other things, all parties were allowed a forty-five (45) day period to provide notice of certain objections to claims of the Debtor's Purported Lienholders.  (*See* Answer at 5, ¶ 12).

11.     The Defendant, SBA, as one of the Purported Lienholders, filed its Claim, as last amended on October 25, 2013 (the day after the Disbursement Order was entered) and docketed in the Court's claims register as Claim 10-3, which seeks allowance of a secured claim in the amount of $1,722,713.57, based upon money loaned as evidenced by a U.S. Small Business Administration Note executed by EG&S. (*See* Answer at 6, ¶ 13).

12.     The SBA's Claim is composed of $1,680,156.02 in principal, $25,299.77 in outstanding interest, and $17,257.78 in accrued interest—a total claimed amount of $1,722,713.57 as of October 23, 2013.  (*See* Answer at 6, ¶ 14).

13.     The first and second versions of the Claim previously filed by the SBA, on August 14 and 28, 2013, docketed in the Court's claims register as Claims 10-1 and 10-2, reflected that outstanding interest of $25,299.77 had accrued under the Loan Documents (as defined below) as of July 19, 2013—the Petition Date—such that the SBA's Claim totaled $1,705,455.79 as of the Petition Date.  (*See* Payoff Statement, Claim 10-2 Part 7, Filed 8/28/17).

14.     Attached to the SBA Proof of Claim are (collectively, the "Loan Documents"): (i)
a U.S. Small Business Administration Note (CDC/504 Loans) dated May 4, 2009,
in the amount of $1,918,000.00; (ii) a Mortgage dated May 4, 2009, recorded with
the Vermilion County Recorder, Illinois on May 4, 2009 (Doc. # 09-04041) (the
"Mortgage"), in favor of Small Business Growth Corporation ("SBGC") as
Mortgagee, purporting to encumber the real property commonly known as 1803
Georgetown Road, Tilton, Illinois (the "Real Property"), and an Assignment of
Mortgage dated May 4, 2009, recorded with the Vermilion County Recorder,
Illinois on May 4, 2009 (Doc. # 09-04042), assigning the Mortgage to the SBA;
(iii) a UCC-1 Financing Statement bearing a Delaware Department of State,
U.C.C. Filling Section date stamp of May 5, 2009 (Initial Filing # 2009 1423760),
naming EG&S as the debtor and the SBA as the secured party (the "UCC-1
Financing Statement"); (iv) a Security Agreement executed May 4, 2009, granted
by EG&S in favor of SBGC and assigned to the SBA (the "Security Agreement");
(v) a Verification of Personal Property Ownership; and (vi) a Pay-Off statement,
dated October 23, 2013, in the total amount of $1,722,713.57.  (*See* Answer at 6–
7, ¶ 15).

15.     The SBA held the Mortgage on the Real Property.  (*See* Answer at 12–13, ¶ 32).

16.     Pursuant to the terms of the Disbursement Order, on or about December 13, 2013,
the Debtor paid the SBA Claim in full by check in the amount of $1,722,713.57
(the "SBA Disbursement").  (*See* Answer at 7–8, ¶ 16).

17.     As set forth in the Disbursement Order, and consistent with the Committee's
Objection, the distribution of Skeff Sale proceeds by the Debtor to the SBA were

"deemed interim distributions only and made without prejudice to the rights of the Debtor, the Committee, or any future trustee to object to secured claims at a later date or to cause an adversary proceeding to be filed, if one is required, seeking a determination as to the extent, validity and priority of any secured claim and any other relief related to a claim of any of the Purported Lienholders," which specifically included the SBA.  (*See* <u>Ex. 5</u> – Disbursement Order at 5 (Dkt. 160); *see also* Answer at 8, ¶ 17).

18.     Under the terms of the Security Agreement, EG&S granted and the SBA received, by assignment from SBGC, "a security interest in the Debtor's <u>equipment and fixtures</u> and the proceeds therefrom" (the "<u>Collateral</u>").  (*See* <u>Ex. 1</u> – SBA Claim, Attachment 4 at 2–4 (Claim 10-3 Part 5); *see also* Answer at 8–9, ¶ 19 (underlining in original)).

19.     The UCC-1 Financing Statement contains the following description of the Collateral: "All equipment and fixtures acquired with loan proceeds and the proceeds thereof, wherever located."  (*See* <u>Ex. 1</u> – SBA Claim, Attachment 4 at 1 (Claim 10-3 Part 5); *see also* Answer at 9, ¶ 20).

20.     The SBA had a perfected security interest in equipment and fixtures acquired with loan proceeds of the SBA loan.  (*See* Answer at 9, ¶¶ 20–21, at 17, ¶ 38).

21.     The SBA did not have a perfected security interest in the Debtor's Beer Distributorship rights, inventory or vehicles sold as part of the Skeff Sale under the Sale Order.  (*See* Answer at 9–10, ¶¶ 21–22, at 17, ¶ 39).

22.     Of the total amount of $290,000.00 paid for the Debtor's vehicles and equipment as part of the Skeff Sale, as set forth in the Closing Statement, approximately

$222,517.65 was paid for vehicles, such that the maximum amount of Skeff Sale proceeds attributable to Debtor's equipment was $67,482.35 (the "Equipment Amount"). (*See* Ex. 4 – Closing Statement—Exhibit A to Report of Skeff Sale (Dkt. 117-1); *see also* Answer at 10, ¶ 23).

23. The Closing Statement indicates that none of the purchase price paid in connection with the Skeff Sale, authorized under the Sale Order, was attributable to fixtures. (*See* Ex. 4 – Closing Statement—Exhibit A to Report of Skeff Sale (Dkt. 117-1); *see also* Answer at 10, ¶ 24).

24. On October 23, 2017, the Court entered the *Order Granting Debtor's Motion for Order Supplemental to the Agreed Order Granting Second Motion of Debtor Pursuant to 11 U.S.C. §§ 105 and 363 and Bankruptcy Rules 2002 and 6004 for Entry of an Order Approving a Sale of 1803 Georgetown Road, Tilton, Illinois Free and Clear of All Liens, Claims, Encumbrances and Interests (Doc. 662), Approving: (I) Modified Terms of Sale, and (II) Purchase and Sale Agreement* (Dkt. 693) (the "Warehouse Sale Order"), overruling an objection by the SBA and authorizing the sale of the Warehouse Property for the final purchase price of $1,185,000.00, pursuant to the terms of the Purchase and Sale Agreement (the "Purchase and Sale Agreement"), which was attached as Exhibit A thereto, and the First Addendum to Purchase and Sale Agreement (the "First Addendum"), which was attached as Exhibit D to the *Reply to United States' Objection to Debtor's Motion for Order Supplemental to the Second Order Approving Sale of 1803 Georgetown Road, Tilton, Illinois, Approving: (I) Modified Terms of Sale, and (II) Purchase and Sale Agreement* (Dkt. 689).

25.     The Affidavit of Rachael A. Gould, Esq. (the "Affidavit"), who reviewed and executed the Purchase and Sale Agreement, the First Addendum, and the Buyer/Seller Disbursement Statement, all in her capacity as an officer of the Custodian of the Debtor, and who was personal knowledge of the closing of the sale approved by the Warehouse Sale Order, confirms the details of the closing as previously set forth in the Report of Warehouse Sale, as true and correct, and, among other things, verifies: (a) the total price for which the Warehouse Property was sold; (b) the proration of 2017 real estate taxes; (c) the broker's fee and 2013-2016 real estate taxes paid at closing, and (d) the amount of net proceeds received by the Debtor from the sale of the Warehouse Property, as set forth in the Buyer/Seller Disbursement Statement.   (See Exhibit 6 – Affidavit, attached hereto, which is incorporated by reference herein, ¶ 4-6, 8).

26.     Following approval of both the Purchase and Sale Agreement and the First Addendum thereto by the Court, the Debtor, by and through the Custodian, closed the sale of the Warehouse Property on Tuesday, November 7, 2017, pursuant to the terms thereof.   (See Ex. 6 – Affidavit, ¶ 7).

27.     A true and accurate copy of the Buyer/Seller Disbursement Statement that Ms. Gould reviewed and executed in her capacity as an officer of the Custodian of the Debtor, on November 7, 2017, as part of closing the sale of the Warehouse Property, is attached to the Affidavit as Exhibit A.   (See Ex. 6 – Affidavit, ¶ 8).

28.     As previously set forth in the Report of Warehouse Sale, which the Debtor filed with this Court on November 22, 2017:

a.  As set forth in the First Addendum and the Affidavit, the gross purchase price for the Warehouse Property, prior to prorations required by the Purchaser and Sale Agreement, was $1,185,000.00 (the "Purchase Price"), of which $1,134,900.00 was allocated for the real estate and $50,100.00 was allocated for the personal property located at the Warehouse Property.

b.  As set forth in the Buyer/Seller Disbursement Statement attached to the Affidavit and the Report of Warehouse Sale as Exhibit A, the net amount due to the Debtor (Seller), after applicable prorations and disbursements for the broker's commission and for real estate taxes (both described below), was $894,891.14.  All closing costs, transfer taxes, recording costs, fees of Purchaser's counsel and the premium for title insurance (a total of $6,658.00[3]) were borne by the Purchaser.

c.  At closing, the real estate taxes not yet billed for tax year 2017 were prorated between the Seller and Purchaser according to the terms of the Purchase and Sale Agreement (for the respective periods of ownership in 2017 based on the 2016 tax bill), thereby resulting in a credit to the Purchaser in the amount of $43,922.44 as set forth in the Buyer/Seller Disbursement Statement, which reduced the Purchase Price paid at closing to $1,141,077.56.

d.  From the foregoing Purchase Price, Hilco Real Estate, LLC's ("Hilco") 2.5% commission of $28,372.50 (based on the Purchase Price allocated to

---

[3]  There is a typo in the Total Title Charges line item as those amounts, borne by Purchaser and unrelated to the Net Amount Due to Seller, totaled $6,658.00 not $61.00, and that amount was used in all calculations.

Real Estate), along with its reimbursable expenses of $11,448.78 (capped at $12,000.00)—a total of $39,821.28—were paid at closing pursuant to the terms of the Real Estate Consulting and Advisory Services Agreement, approved by the *Order Granting Application for Order Approving Employment of Hilco Real Estate, LLC as Real Estate Broker Effective as of the Date of the Agreement* (Dkt. 576), which required and authorized the payment as an administrative expense at closing without further order of the Court. Hilco's Statement setting forth the amounts payable was attached to the Report of Warehouse Sale, and a true and accurate copy is also attached to the Affidavit, as <u>Exhibit B</u>.[4]

e. Finally, from the foregoing Purchase Price, the real estate taxes for tax years 2013, 2014, 2015 and 2016, in the aggregate amount of $206,365.14, were also paid at closing. The payoff statements from the Treasurer of Vermilion County, Illinois, setting forth the amounts the Treasurer asserted were due and owing, were attached to the Report of Warehouse Sale, and true and accurate copies are also attached to the Affidavit, as <u>Exhibit C</u>.

f. The foregoing, collectively, resulted in net proceeds from the sale of the Warehouse Property in the amount of $894,891.14, as set forth in the Buyer/Seller Disbursement Statement and the Report of Warehouse Sale,

---

[4] There is a typo in the Total Purchase Price listed in Hilco's Statement. The 2.5% commission, in fact, was based on the total Purchase Price amount of $1,134,900.00 allocated to the Real Estate.

which have been received by the Debtor and are being held pending
further order of the Court.

(*See* Ex. 6 – Affidavit, ¶ 9(a)-(f), Ex. A, Ex. B and Ex. C).

29.     The Illinois Department of Revenue reserved the right to assert that an Illinois
bulk sales law interest has superpriority in the distribution of the proceeds of sale
of the Warehouse Property, as set forth in the *Second Order Approving Sale of*
*1803 Georgetown Road, Tilton, Illinois* (Dkt. 662) and as referenced in the
Warehouse Sale Order, and the Debtor and all parties in interest reserved the right
to object to such assertion and interest.

## III.     ARGUMENT

### A.     Summary Judgment Standard

A court must grant summary judgment when the materials in the record show that there is
no genuine issue as to any material fact and the moving party is entitled to judgment as a matter
of law.  Fed. R. Civ. P. 56(a).  The Seventh Circuit has stated that summary judgment "is the 'put
up or shut up' moment in a lawsuit, when a party must show what evidence it has that would
convince a trier of fact to accept its version of events."  *Koszola v. Bd. of Educ. of City of*
*Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004), *overruled on other grounds*, *Ortiz v. Werner*
*Enters., Inc.*, 834 F.3d 760, 764-65 (7th Cir. 2016).  The moving party may either cite evidence
that negates an element of the non-movant's claim, or point to an absence of evidence to support
the non-movant's claim.  *See Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013)
(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *see also* Fed. R. Civ. P. 56.

The Court's only task is determining, based on the evidence of record, whether there is
any material dispute of fact that requires a trial.  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918,
920 (7th Cir. 1994); *Broadstone v. Sherman's Place, Inc.*, Case No. 15-1453, 2017 WL 5907469,

14

at *3 (C.D. Ill. Nov. 30, 2017).  While the court construes the evidence and draws all reasonable inferences in favor of the non-moving party, speculation is not the source of a reasonable inference.  *Springer v. Durflinger*, 518 F.3d 479, 483–84 (7th Cir. 2008); *Chmiel v. JC Penny Life Ins. Co.*, 158 F.3d 966, 968 (7th Cir. 1998).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).  Therefore, to survive summary judgment, the non-moving party must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial.  *See Celotex*, 477 U.S. at 322–33.

### B. The Court Should Grant Summary Judgment on Count I Ordering Defendant to Turn Over Estate Property to the Plaintiff.

In this case, the Plaintiff, as Debtor and Debtor-in-Possession, seeks turnover of the funds that were previously disbursed to the Defendant on an interim basis only, without prejudice to the rights of the Debtor (as well as the Committee or any future trustee) to seek a determination of the extent, validity and priority of the SBA's secured claim and any other relief.  The amount that the Debtor requests to be turned over to the estate for disbursement under the proposed plan of liquidation is $1,655,231.22, plus interest.  This amount would permit the SBA to retain from the prior interim disbursement of $1,722,713.57 the maximum amount of proceeds attributable to the Debtor's equipment previously sold as pled in the Complaint, which is $67,482.35.

The statutory provision for turnover contained in 11 U.S.C § 542(a) deals with property of the estate to be turned over to the appropriate party, with the exceptions provided in § 542(c) and (d), and subject to set-off rights referenced in § 542(b) pursuant to 11 U.S.C. § 553.  Section 542(a) provides in pertinent part:

> **(a)**  Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under

15

section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

Turnover is intended as the remedy to obtain what is acknowledged to be property of the bankruptcy estate. *Marlow v. Oakland Gin Co., Inc. (In re The Julien Co.)*, 128 B.R. 987 (Bankr. W.D. Tenn. 1991), *aff'd*, 44 F.3d 426 (6th Cir. 1995). In this case, there can be no dispute that the plain language of the Disbursement Order, under which the SBA accepted the distribution, clearly stated that it was "deemed [an] interim distribution[] only." The key paragraph of the Disbursement Order is on page 5, as follows:

> IT IS FURTHER ORDERED that notwithstanding the Objection Deadline, and except as provided herein as to Regions, all distributions of sale proceeds by the Debtor shall be deemed *interim distributions only* and made *without prejudice* to the rights of the Debtor, the Committee, or any future trustee to object to secured claims at a later date or to cause an adversary proceeding to be filed, if one is required, seeking a determination as to the extent, validity and priority of any secured claim and any other relief related to a claim of any of the Purported Lienholders.

(Disbursement Order, p. 5 (Dkt. 160) (emphasis added)). Thus, the distribution to the SBA was indisputably made only on an interim basis, with a reservation of rights.

Interim distributions are interlocutory in nature. *In re Partial Hosp. Inst. of Am.*, 281 B.R. 728, 734 (Bankr. S.D. Ala. 2001) (citing *In re M. Paolella & Sons, Inc.*, 85 B.R. 965, 971 (Bankr. E.D. Pa 1988) ("any distribution made to MNC would likely be interim and recoverable by the trustee, if MNC is shown to have received a sum greater than that to which i[t] was entitled."); *In re Am. Int'l Airways, Inc.*, 47 B.R. 716, 722 (Bankr. E.D. Pa. 1985) (discussing the interlocutory nature of interim fee awards)). A creditor who receives an interim distribution takes it subject to "the risk that the distribution will have to be refunded to the estate if necessary

16

for final distribution." *In re Partial Hosp.*, 281 B.R. at 734. And when payments are made under court order on an interim basis, there is no need to utilize the power under § 549, which concerns transfers "made outside of the processes of the bankruptcy case." *In re NETtel Corp.*, Case No. 00-01771, 2017 WL 5664840, at *8 (Bankr. D.D.C. Oct. 2, 2017).

In this case, as to the SBA, the Disbursement Order authorized only an interim distribution, and specifically reserved to the Debtor (and others) the right to seek "any other relief related to a claim of any of the Purported Lienholders." (Disbursement Order, p. 5). By contrast, the same paragraph of the Disbursement Order provided that a portion of the payment to Regions Bank "shall be final and not an interim distribution" in conjunction with a holdback. Accordingly, other Purported Lienholders, such as SBA, that received an interim distribution pursuant to the Disbursement Order were on notice that the distribution was interim in nature, not final, that it was subject to the continuing interest of the Debtor and its estate, the jurisdiction of this Court, and that it would be subject to return (turnover) if the Debtor later objected to its secured claim and sought relief. These provisions made clear that the distribution to the SBA was interim in nature, not final, and would remain subject to the rights reserved.

Relief under § 542 is most frequently afforded to case trustees against creditors who are in actual or constructive possession of the subject property and who do not voluntarily surrender it. *See Pileckas v. Marcucio*, 156 B.R. 721 (N.D.N.Y. 1993). Hence, the burden is usually on the trustee seeking turnover, *Groupe v. Hill (In re Hill)*, 156 B.R. 998 (Bankr. N.D. Ill.1993), and the evidence must show that the asset in question is part of the bankruptcy estate. *Mather v. Tailored Fabrics, Inc. (In re Himes)*, 179 B.R. 279 (Bankr. E.D. Okla. 1995); *Orix Credit Alliance, Inc. v. Wojcicki (In re Wojcicki)*, Bankr. No. 97 B 24008, Adv. No. 01286, 1997 WL 742513 (Bankr. N.D. Ill. Dec. 1, 1997). Only property in which the debtor has an interest that

becomes part of the bankruptcy estate can be made the subject of an order for turnover under § 542(a). *Cates-Harman v. Stage (In re Stage)*, 85 B.R. 880 (Bankr. M.D. Fla.1988).

There is no valid dispute that the property Plaintiff seeks to recover through this turnover action is property of the estate. Plaintiff sold estate property as part of the Skeff Sale, as proposed in the Sale Motion and approved by the Sale Order, and paid Defendant with the proceeds of the Skeff Sale on an interim, provisional basis with a reservation of rights regarding the allowance of the SBA's Claim and payment of that Claim. Section 542(a) therefore requires Defendant to turn over that estate property to the Debtor with interest equal to the federal judgment rate.

Pursuant to § 553 of the Bankruptcy Code, the Defendant has a right of setoff regarding any allowed secured claim in the property. However, it is undisputed that out of the estate property sold pursuant to the Sale Order, the SBA only potentially held a security interest, via the Security Agreement and its UCC-1 Financing Statement, in the Debtor's equipment, for which the maximum amount paid, as pled in the Complaint, was $67,482.35. Accordingly, it is undisputed that Defendant received an interim distribution of estate property in the amount of at least $1,655,231.22, that represents proceeds of estate property on which it did not hold any lien, claim or encumbrance, such that this amount should be turned over to the Plaintiff.

The Debtor is also entitled to interest on the turnover amount at the applicable federal judgment rate from the date of the interim disbursement to the SBA, plus costs of this suit. (*See* Complaint, p.8). The right to interest is governed by traditional principles and is a matter committed to the Court's discretion. *Gorenstein Enters., Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 439 (7th Cir. 1989) (citing *Myron v. Chicoine*, 678 F.2d 727, 734 (7th Cir. 1982)). A common standard used by courts considering an award of prejudgment interest is whether the

"amount of the claim is either liquidated or reasonably ascertainable by reference to established market values." *In re Indus. & Mun. Eng'g, Inc.*, 127 B.R. 848, 851 (Bankr. C.D. Ill. 1990) (citing *In re First Software Corp.*, 107 B.R. 417, 425 (D. Mass. 1989)).  Here, SBA has held $1,655,231.22 of estate property—proceeds of the Skeff Sale—to which its liens did not attach. The SBA was well aware that this interim distribution was provision and subject to turnover, as evidenced by the fact that the SBA, as it readily acknowledges, did not release its Mortgage, did not terminate its UCC-1 Financing Statement, and did not withdraw its Claim.  The amount is easily ascertainable and should be returned to the estate with interest.

Previously, in connection with Debtor's first Motion for Summary Judgment, the SBA argued the language of the Disbursement Order was immaterial because it authorized a transfer. But the entire Disbursement Order, and not just a portion cherry-picked by SBA, must be given effect.  *Adem v. Bush*, No. 05-723, 2006 WL 1193853 (D.D.C. April 28, 2006) ("The starting point for interpreting a court order is the plain meaning of the text").  On the one hand, the SBA attempted to read out and ignore the word "interim," yet on the other hand the SBA said it would "withdraw its secured claim [Claim 10-3] and release its first mortgage lien on the EGS Warehouse as paid in full" only if this Court would find "that the $1,722,713.57 is final[.]" (*United States' Reply in Support of Its Cross Motion for Summary Judgment* (Dkt. 51), p. 1-2.) This highlights the crux of the issue:  The SBA sought to read out the very restrictions and conditions within the Disbursement Order that permitted it to receive an interim distribution of estate property.  The prior disbursement, however, was only interim.  And the sale of the Warehouse Property has now established that the SBA is not entitled to the amount of estate property it previously received, such that there is no legal or equitable basis to permit the SBA to retain that disbursement as final or otherwise.

SBA's prior reliance on *Grede v. FCStone, LLC*, 746 F.3d 244 (7th Cir. 2014) (FCStone I) is misplaced. While the Seventh Circuit Court of Appeals*,* in dicta, wondered (and did not decide) whether a transfer could ever be authorized other than under § 549, the gravamen of the *FCStone I* decision is that a Court order means what the plain language provides. *Id.* at 256. Therein, the order at issue authorized a transfer of funds shortly after the petition date, on an emergency basis, which the debtor had asserted were not estate property because the funds belonged to its customers. *Id.* at 255. Thus, the transfer was not made on an interim basis and, except for a small holdback, was made without a reservation of the estate's rights, the debtor having asserted at the time that the estate had no right to the funds. *Id.* at 256 (noting that "[t]he reservation of a five percent holdback signaled quite clearly that the rest of the distribution was not subject to avoidance."). Consistent with *FCStone I*, this Court need only read the language of the Disbursement Order to determine that the payment to the SBA was, in fact, interim only and is subject to this Court's continuing jurisdiction and power to order turnover, pursuant to § 542(a), and within its discretion pursuant to § 105(a). *See, e.g.*, *Ungaretti & Harris, LLP v. Steinberg (In re Resource Tech., Corp.)*, No. 08 C 4235, 2008 WL 4696073 (N.D. Ill. Oct. 20, 2008) (noting that interim fee payments can be ordered returned under § 105(a) (citing *Matz v. Hoseman*, 197 B.R. 635, 639-40 (N.D. Ill. 1996); *In re Kids Creek Partners, L.P.*, 219 B.R. 1020, 1022 (Bankr. N.D. Ill. 1998)) and further noting that interim compensation is accepted at the recipient's own peril).

The SBA's suggestion that this Court lacks the power to order the return of estate property that was expressly disbursed on only an interim basis with a full reservation of rights makes no sense. The SBA's position would nullify the plain language of the Disbursement Order. To do so would violate *FCStone I*. The right to seek relief, including turnover of the

interim distribution made to SBA, was expressly preserved and *FCStone I* does not mandate (or even suggest) a different result. To now read the word "interim" out of the Disbursement Order would violate not only the plain language thereof, but also the very basis upon which the SBA was authorized to receive estate property. The Court should therefore grant summary judgment on Count I for turnover of the amount requested both because that right was expressly reserved and because it is implicit in the common understanding of the word "interim."

The other case the SBA previously relied on, *Covey v. Practice Management Support Services, Inc. (In re Knight)*, 2006 WL 3147714 (Bankr. C.D. Ill, Nov. 1, 2006), actually supports Debtor's entitlement to turnover. The *Covey* Court noted that § 542(a) provides for the turnover of property that belongs to the bankruptcy estate and provides the remedy to obtain what is acknowledged to be property of the bankruptcy estate. *Covey*, 2006 WL 3147714 at *2 (citing *In re Roti*, 271 B.R. 281, 291 (Bankr. N.D. Ill. 2002)).

SBA has admitted that it received property of the estate. (*Response and Cross-Motion*, p. 1, 12). In an effort to avoid turnover, however, SBA has argued that the estate no longer has an interest in the money. Again, this would nullify the meaning of "interim," the express basis on which estate property was authorized to be received under the Disbursement Order. The SBA's argument fails in this Circuit, where, so long as the property to be turned over was once property of the estate, it does not matter whether the creditor has retained possession of those specific dollars; the creditor is required to turn over the property, or to account for its value. *Matter of USA Diversified Prods., Inc.*, 100 F.3d 53, 56 (7th Cir.1996); *In re Robertson*, 105 B.R. 440 (Bankr. N.D. Ill 1989). The SBA must therefore, as demanded in Count I of the Complaint, turn over the funds, or pay the amount of the funds, to the Debtor under § 542 with interest, as set forth below.

### C.   The SBA's Claim Should be Disallowed, in Full, Unless the Estate Property is Turned Over, and the SBA is Not Entitled to Postpetition Interest on its Claim.

Because the Defendant is holding property of the estate that is recoverable under § 542 and that it has not turned over, the SBA Claim should be disallowed under § 502(d) unless and until the full amount of the estate property is returned, with interest and costs of this suit. Section 502(d) of the Bankruptcy Code provides:

> **(d)**  Notwithstanding subsections (a) and (b) of this section, the court *shall* disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

Bankruptcy Code § 502(d) penalizes a creditor that refuses to turn over property under § 542(a), and well-settled law provides that the provisions of § 542 are self-executing and do not require an order of the Court to compel turnover. *Matter of USA Diversified Prods., Inc.,* 100 F.3d at 56; *In re Knaus,* 889 F.2d 773, 775 (8th Cir.1989). The duty to turn over estate property exists without a court order, and the failure to comply with this duty is cause for the disallowance of any claim by that creditor until the property is returned. Plaintiff is entitled to summary judgment on this issue.

In addition, because the recent sale of the Warehouse Property has established that the SBA Claim is undersecured, the SBA is not entitled to the payment of postpetition interest on its Claim and its Claim should be reduced to exclude the amounts asserted for postpetition interest—the accrued interest of $17,257.78. Section 502(b) of the Bankruptcy Code, in relevant parts, provides:

> **(b)**  Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> *              *              *
>
> **(2)**  such claim is for unmatured interest; . . . .

11 U.S.C. § 502(d).  None of (e)(2), (f), (g), (h) or (i) of § 502 apply in this circumstance. Subsection (b)(2) therefore, read in conjunction with § 506(b), means that the SBA's undersecured Claim is not entitled to be paid postpetition interest and all such amounts shall be disallowed.  4 *Collier on Bankruptcy* ¶ 502.03[3][a], [3][b][i] n.47, [3][d][i] at 502-26, 502-28, 502-32 (16th ed. 2016).

### D.     The Court Should Grant Summary Judgment on Count III, Determining the Secured and Unsecured Portions of the SBA Claim.

The determination of the allowed secured and unsecured portions of the SBA's Remaining Claim, presuming that it turns over the estate property as ordered or voluntarily, is governed by Section 506(a) of the Bankruptcy Code.  Section 506(a) of the Bankruptcy Code provides, in pertinent part:

> **(a)(1)**  An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . . .

11 U.S.C. § 506(a).  Pursuant to § 506(a)(1), "if a creditor is not oversecured, it has a secured claim equal to the value of the collateral and an unsecured claim for the balance."  *In re S. Side House, LLC*, 451 B.R. 248, 261–62 (Bankr. E.D.N.Y. 2011) (citing *United Sav. Ass'n of Tex. v.*

*Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372 (1988) ("[t]he phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral.' ")).

Here, as the Warehouse Property has been sold, the allowed secured portion of the SBA Claim, presuming turnover of the funds, will be equal to the amount of net proceeds from the sale of the Warehouse Property that would be payable to the SBA on account of its Mortgage, in its order of priority—the SBA Interest. *In re Schreiber*, 163 B.R. 327 (Bankr. N.D. Ill. 1994) (citing 3 King, *Collier on Bankruptcy*, ¶ 506.04 at 506-27 (15th ed. 1993) (stating "[i]n the event the property is actually sold, regardless of the purpose for valuation, valuation of the collateral should normally be based on the sale price").

Section 506(b) of the Bankruptcy Code, as referenced above, provides:

> **(b)** To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section,[5] is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). This provision entitles only the holder of an oversecured claim to postpetition interest. *See In re Schreiber*, 163 B.R. at 334 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). As noted above, postpetition interest is denied to undersecured creditors pursuant to 11 U.S.C. § 502(b)(2), and is also denied "to the extent that such interest, when added to the principal amount of the claim, will exceed the value of the collateral." *Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. at 372. Among other reasons, because the SBA Claim is undersecured, it is not entitled to interest.

---

[5]   Section 506(c) permits the trustee to recover from property securing an allowed secured claim the reasonable and necessary costs of preserving or disposing of the property to the extent of the benefit of the holder of such claim including the payment of all ad valorem property taxes with respect to the property. 11 U.S.C. § 506(c).

The Debtor is entitled to summary judgment regarding the determination of the allowance of the secured and unsecured portions of the SBA Claim.  The SBA Claim is asserted to be $1,722,713.57 as of October 23, 2013, composed of $1,680,156.02 in principal, $17,257.78 in accrued interest, and $25,299.77 in outstanding interest.  Deducting the Equipment Amount that Debtor proposes the SBA be permitted to retain, and disallowing the postpetition accrued interest of $17,257.78, the SBA's Remaining Claim is $1,637,973.44.   Once the SBA returns the property of the estate that it is required to turn over, in the amount of $1,655,231.22, the allowed secured portion of its Remaining Claim will be equal to, and cannot exceed, the value of the collateral in which the SBA has an interest—the amount of the SBA Interest—and the SBA's allowed unsecured claim will equal the difference between the Remaining Claim and the SBA Interest.  Plaintiff is entitled to summary judgment on this issue.

## IV.  CONCLUSION

The undisputed material facts demonstrate that Plaintiff is entitled to judgment in its favor and against Defendant, the SBA: (1) for turnover of the estate property to the Debtor in the amount of $1,655,231.22, with interest at the federal judgment rate from the date of the disbursement to the SBA, December 13, 2013, plus costs of this suit; (2) disallowing the SBA Claim pursuant to 11 U.S.C. § 502(d), in full, unless the SBA returns the estate property to the Debtor in the amount of $1,655,231.22, with interest, plus costs of suit, and disallowing the SBA Claim as to postpetition interest pursuant to § 502(b) given that it is undersecured; and (3) determining that, subject to disallowance under § 502(d), the SBA's Remaining Claim of $1,637,973.44 will, pursuant to § 506(b), be allowed in the secured amount equal to the SBA Interest—the amount it is entitled to receive from the sale of the Warehouse Property in the order of priority of its Mortgage—and will be allowed in the unsecured amount of the difference between such Remaining Claim and the amount of such SBA Interest.

WHEREFORE, Plaintiff hereby requests that the Court enter summary judgment in its favor on all Counts of the Complaint and grant such other and further relief that the Court deems just and appropriate.

Respectfully submitted,

ICE MILLER LLP


By:/s/ Tyson A. Crist
    Victoria E. Powers
    Tyson A. Crist
    250 West Street
    Columbus, OH 43215
    614-462-5010 – Telephone
    Victoria.Powers@icemiller.com
    Tyson.Crist@icemiller.com
    *Counsel to the Debtor*

## CERTIFICATE OF COMPLIANCE
## WITH DISTRICT COURT LOCAL RULE 7.1(B)(4)(b)

I hereby certify that this document was prepared using Microsoft Word 2010, and that its word count function indicates that the Argument and Conclusion sections of the foregoing *Memorandum in Support* portion of *Plaintiff's Renewed Motion for Summary Judgment*, together, contain 4,185 words, including footnotes, which is under both the 15 page and 7,000 word limits imposed by Local Rule 7.1(D)(5), by which the page and type volume limitations of Local Rule 7.1(B)(4) are made applicable thereto.

ICE MILLER LLP


By: /s/ Tyson A. Crist
     Victoria E. Powers
     Tyson A. Crist
     *Counsel to the Debtor*


## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2017, I electronically filed the foregoing *Plaintiff's Renewed Motion for Summary Judgment* via the Court's CM/ECF system, which will electronically mail notice of such electronic filing to:

- David H. Hoff on behalf of Defendant United States Small Business Administration   peter.g.paoli@usdoj.gov, Chelsea.dean@usdoj.gov

- Kate R. O'Loughlin on behalf of Defendant United States Small Business Administration   kate.oloughlin@sba.gov

ICE MILLER LLP


By: /s/ Tyson A. Crist
     Victoria E. Powers
     Tyson A. Crist
     *Counsel to the Debtor*